# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES ANTHONY SBARRA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-13-453-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant James Anthony Sbarra requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 6, 1971, and was forty years old at the time of the administrative hearing (Tr. 51). He completed his GED and earned a welding certificate, and has worked as a fabrication supervisor and body assembly spot welder (Tr. 19, 64, 155). The claimant alleges he has been unable to work since December 1, 2008, due to brittle diabetes, pancreatitis, hypertriglyceridemia, tachycardia, chronic pain, and depression (Tr. 50, 168).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 7, 2010. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated June 29, 2012 (Tr. 10-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform the full

range of medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(b) (Tr. 13). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a shop supervisor or body assembly spot welder. Alternatively, the ALJ determined that the claimant was not disabled because there was other work that he could perform, *i. e.*, machine packager or industrial cleaner (Tr. 20).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the medical opinion of his treating physician, Dr. Patrick G. Norris, M.D.; (ii) by ignoring substantial, probative evidence that conflicted with his findings; (iii) by improperly adopting the opinion of a state reviewing physician over Dr. Norris's opinion; and (iv) by failing to use the PRT analysis technique with regard to his mental impairments. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze Dr. Norris's opinion, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of history of pancreatitis and diabetes mellitus, as well as the nonsevere impairments of hypertension, moderate degenerative joint disease of the right wrist, and residual side effects of medications (Tr. 12). As relevant to this appeal, the claimant was treated for acute pancreatitis and abdominal pain, as well as new-onset diabetes mellitus and severe hypertriglyceridemia on October 11, 2008 (Tr. 253). A CT scan revealed findings of pancreatitis (Tr. 263). The claimant was admitted to McKee Medical Center in Loveland, Colorado on December 9, 2008, for pancreatitis and uncontrolled diabetes and discharged

on December 11, 2008 once his pain improved and blood sugars were regulated (Tr. 199).

In March 2010, the claimant was treated at Poudre Valley Health System for abdominal pain and right leg cellulitis with a thigh abscess (Tr. 234). On discharge, notes reflect that the claimant did not appear to have clinical pancreatitis, but that it should be considered in light of his history of hypertriglyceridemia and hypercholesterolemia (Tr. 234). On November 21, 2010, the claimant was treated at St. John hospital for acute exacerbation of chronic pancreatitis, hyperglycemia, and hypertriglyceridemia (Tr. 314).

The medical record contains at least two years of treatment notes from Dr. Norris, an internal medicine resident at OU Internal Medicine, whose assessments and plans were agreed to by attending physicians who also occasionally saw and treated the claimant. Notes reflect that the claimant was treated for chronic pancreatitis and his diabetes, with efforts focused on pain control and blood sugar control (Tr. 334-357, 371-400). On January 20, 2011, the claimant reported to Dr. Norris that his pain was better controlled and that he was able to leave the house more than he had been able to in a long time (Tr. 334). The claimant reported doing well on his pain regimen on March 17, 2011 (Tr. 387), but on May 16, 2011, the claimant requested an increase to pain medications because he was having a "great deal of trouble with abdominal pain," and Dr. Norris's notes state that in light of his pancreatitis the request was reasonable (Tr. 371, 374). On August 10, 2011, the claimant was in for follow-up and reported recent fainting spells and worsened pain secondary to his chronic pancreatitis – to the point that he could not

work a part-time job at a shooting range (Tr. 412). As a result, an increase in the claimant's pain medications was temporarily justified (Tr. 415). Following this flare-up, the claimant was returned to his regular pain medication regimen (Tr. 426). On April 10, 2012, the claimant presented with complaints that his pancreatitis prevented him from being able to function, causing him to rarely leave the house due to pain or depression (Tr. 437). Noting that the claimant's "credibility is not an issue for me" because he had been treating the claimant for some time, Dr. Norris recommended long-acting pain relief accompanied with breakthrough pain medication, and noted a treatment plan for the claimant's increased anxiety and depression (Tr. 440).

Dr. Norris also completed a physical Medical Source Statement (MSS) of the claimant's ability to do work. He indicated that in an eight-hour workday, the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk less than two hours total at less than thirty minute intervals, sit at least two hours but less than six hours for less than two hours at a time, and that he could not walk a block at a reasonable pace because he becomes dizzy (Tr. 403-404). Furthermore, he indicated that even if the claimant could obtain a job that accommodated such restrictions, the claimant would not be able to maintain it for eight hours a day, five days a week, due to pain from chronic pancreatitis (Tr. 404). Additionally, he noted that the claimant had reduced concentration and motor skills when on a narcotic medication, and that the claimant would likely miss work three times or more a month due to pain, nausea, and cramping (Tr. 404).

State reviewing physician Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on March 28, 2011, in which he found that the claimant could perform the full range of medium work (Tr. 361). Dr. Woodcock summarized the evidence available at the time of his assessment, but it was completed over a year prior to Dr. Norris's MSS dated April 20, 2012 (Tr. 361, 404).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's

attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's continued treatment for pancreatitis and diabetes. In his written opinion, the ALJ stated that his assessment that the claimant could perform medium work was consistent with his "stable condition" discharge in December 2008 (Tr. 15). Furthermore, he noted the claimant's January 20, 2011 report that his pain was better under control and that he had done well following increased pain management in the fall 2011, as well as notes where the claimant's blood sugar was well under control (Tr. 15). He then summarized Dr. Norris's physical MSS, as well as Dr. Woodcock's physical RFC assessment. He found the claimant not credible, specifically citing again the January 20, 2011 visit where the claimant reporting doing well on his pain medications and the October 10, 2011 report of doing well on the pain management plan. He then declined to give Dr. Norris's opinion controlling weight

because it was inconsistent with the record, outside his specialty, and the claimant did not have a flare-up every time he went to the doctor (Tr. 18). The ALJ's conclusion that the opinions expressed by Dr. Norris were inconsistent with other medical evidence in the record would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Despite Dr. Norris's status as a resident in Internal Medicine, the ALJ also stated without support that his opinion was "outside his specialty." Furthermore, the ALJ was not required to give controlling weight to Dr. Norris's opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ simply declined to give it controlling weight because it was not fully

consistent with unspecified medical evidence of record, but neglected to discuss the evidence related to flare-ups, need for increased pain control at times, and his multiple reports that he had difficulty leaving his home due to his pain levels. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). In contrast, the ALJ gave Dr. Woodcock's 2011 assessment consideration because it was "somewhat consistent" with the record. The ALJ thus improperly evaluated the treating physician's opinion that the claimant was disabled.

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the

ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**